May be seated. Good morning, ladies and gentlemen. We are gathered here to have rehearing en banc in the case of C.J.L.G. v. Whitaker. Hear from the petitioner. Good morning, Your Honors. May it please the Court. Ahilan Arulanan for the petitioner of C.J. I'd like to reserve five minutes for rebuttal. There are two ways to decide the constitutional claim for counsel in this case, either under the law governing children, how children are treated in judicial proceedings, and in particular In re Galt and the various cases decided in the 50 years since that case, or the general civil counsel doctrine, Matthews v. Eldridge, and Turner v. Rogers, in particular, with its focus on the complexity of the proceedings at issue, whether the other side is represented, and whether the issues can be reduced to simple forms. Starting with Galt and the law governing children, the government's primary position in this case remains that any child, even presumably 3- or 4-year-olds, can obtain fair deportation hearings without lawyers. Do we have to address that issue? I mean, the government's position on that issue may be wrong, but do we have to address that in this case? Well, Your Honor, if the question is, is there a way to draw a line between a 3- or 4-year-old and someone like this? Well, is there a way to look at a particular case and determine? For example, I think it would be impossible for a 3- or 4-year-old to get due process. I agree, Your Honor. But a 16-year-old accompanied by a mother in which the claim, the social group claim is roughly the same social group claim as the mother's might be different. So my question is, do we have to address the broader issue in this case, or is there a narrower issue in front of us? Well, Your Honor, I think if the Court takes as a premise that there are some children that are too young and absolutely couldn't get a fair hearing with a lawyer, then the case narrows very much, and there's really only two issues. And so I think the Court would have to address these two issues in order to rule for us in C.J. One is the age question. Where do you draw the line if a 4-year-old, why not a 6-year-old or a 10-year-old? And there's a lot of law there. I said unaccompanied, by the way, so. Yes. And that's the second question, Your Honor, is the parent. Does it matter that he's the parent? There is a third question, too, and that is the nature of the proceeding. The government takes the position in its briefing that not all of the types of proceedings are equally complex, and that seems to be intuitively true in looking at the procedures. Would it be enough to say that someone who appears to be eligible for S.I.J. classification, that that proceeding is complex by its very nature? And isn't that another way to draw the line here, to say that someone who is potentially eligible would be entitled to counsel? Let me answer the question about proceedings, Your Question, Your Honor, and then about parents and then about ages. So, yes, Your Honor, the answer is yes in the sense that C.J. was prima facie eligible for S.I.J. relief, and you could reverse this removal order on the ground that you just described. I think the difficulty with limiting any claim for counsel to that basis is that you'd have to know, somehow figure out, whether a child was eligible without a lawyer on the theory that you imagine. And this immigration judge failed to see that this child was eligible for special immigrant juvenile relief. The difficulty is you wouldn't establish the broader principle. The difficulty isn't that your client wouldn't get relief in this case. The difficulty is that you'd like to establish a broader principle. Well, but the ---- If we were to say, if we were to grant a petition for review because your client wasn't told that there's eligibility for S.J.I. relief, you would have — your client would have won. He would win, absolutely, Your Honor. So that's not a difficulty. That's a good thing. It is a good thing, Your Honor. And to be clear, we have preserved any ground for relief that includes our client C.J. We're explicitly about that in the reply brief. So our vote is — But on that point, would you address the government's argument that it's moot now that he's now going through these proceedings? It's not moot, Your Honor, because you can't adjust status, which is the ultimate endpoint that S.I.J. relief gets you to, unless the removal order is vacated. So there's no way that he can get the relief that he ultimately wants to seek, which is to make a motion to reopen. Well, can't he make a motion to reopen? He could. He could make a motion to reopen, but there's many reasons to believe it would not be granted. I mean, yeah, lots of them. It's not a requirement. It's discretionary just to begin with. In addition, he — well, he has to first get the I-360 granted. So there's another stage before he gets to file the adjustment. So that paper that you filed, I couldn't — it's — are we — you didn't specifically say that it's the same person that's in this proceeding? It's kind of a little — It is. I'm sorry if that was ambiguous. It is, Your Honor. All right. And he hasn't been granted? It's just been filed? Is that — No. The State court order has been granted. So he's now got the first stage in the three parts that you need to ultimately win a case on your stage. And has he filed the — has he filed the application with USCIS? He has not. Why not? The State court order just came. He needs a State court order first. Yes. And it just came. The State court order just came days before this proceeding. So could you run through how this would work as a practical matter? Because this special juvenile status is a form of relief for an individual in your client's situation. So if we were determined that this form of relief is one which the immigration judge needs to advise, and it would apply in — presumably not just to your client, but to others similarly situated, what would be the procedural status and process on remand? Well, on remand, the court — if the removal order is vacated, then we go back in front of the immigration judge. And in order to ultimately prevail on an adjustment application on the ground that he's eligible for special immigrant juvenile, first you have to get that I-360, which hopefully is — he's going to apply for. There's no guarantee you'll get that. But the SIJ doesn't give him any relief. The SIJ just puts him in a special immigrant category, right? And he still — before he is even in that category, he needs USCIS consent, correct? Yes. There's — yes, there's three — there's three parts. And only then he can apply for relief. Is that right? He can apply for adjustment of status? That's correct, Your Honor, as a procedural matter. But to be clear, the board is reversing immigration judges who aren't giving — well, prior to — when we filed the reply brief, the original reply brief, the board had been reversing immigration judges who were not giving children time to seek the State court order, to seek the I-360. Well, I'm just trying to find out at what point he gets relief. So he — only after he gets consent is he then in a category which allows him to apply for adjustment of status, and then he needs to have a visa available? That's correct. Is that right? Yes. And do we know if there's — what the status is of immediate visa availability? There's a — there's a backlog in visas. I don't know the date at which that backlog is currently set to clear. It also fluctuates, because Congress could allocate more visas for that. And then is there a discretionary element after that, or is it automatic? The last part, adjustment is discretionary. So then somebody would — an I.J. would have to make a discretionary determination at the end of the road. That's correct, Your Honor. And in that way, it's similar to other failure to advise claims which rest on discretionary relief. This Court has done — asylum also. Asylum, you don't need to get a State court order or consent of USCIS. It's — the application is actually made in the hearing. That's correct. So there's no application that could be made in the hearing. Well, the adjustment application is an application in the hearing. No, the S.I.J. application is not made in the hearing. The USCIS consent is not made in the hearing. That's correct. There's three different actors that are involved in this, which is part of why I think, as Judge Graber had suggested earlier — or I hope you were suggesting it, anyway — it is very complicated, and it is — No, it takes years. — it is impossible — Takes years. Excuse me, Your Honor? Takes years. Sometimes it's faster than that. It doesn't always take years. But if you have a lawyer, you have to go through multiple different proceedings. So it's very complicated. What would have happened here had the immigration judge informed C.J. of this? Would the removal proceedings have been continued? Would they have — would they have continued or been continued? Well, I think in practice, without a lawyer, nothing much different would have happened. I understand. Well, let's assume — let's assume a — the immigration judge says, I'm telling you you can apply for this, and C.J. and his mother says, well, we'd love to apply for it, and we're going to. Would the judge then — because nothing would have occurred then — would the judge then continue the removal hearing, or would the judge continue with the removal hearing? Well, so I'm trying not to be difficult, but — Okay. Let's assume you had — let's assume you had Clarence Darrow. Under that circumstance, what would the judge — what would the judge do under that circumstance? The judge is — would grant a continuance and give — Always? No. And particularly after Castro Tum, the BIA's decision, recent decision, this has gotten more difficult. But the — So the judge had the discretion to say, go apply, but I'm going to continue with these proceedings. And at the end of the day, you can go — you can go seek to reopen. Yeah. So again, this is in flux, right, because the board was reversing these cases, and we cite those, I think, in footnote 12 of our reply brief before the supplemental, before it went on bank. But now we have Castro Tum, and I'm not aware of — What does that hold? Castro Tum makes it much harder to get a continuance. It makes it — it says you have to have a bunch of showings, like, that you're likely to get the relief. There's also now some rule that 95 percent of the cases have to be finished in the first hearing? Yes, Your Honor. There's performance goals to try and get cases done quickly. So it's unclear. I think a lawyer would argue vociferously — The judge could have granted a continuance or maybe not granted one. Is that fair? Yes. Absolutely, Your Honor. I have another question. The USCIS says in their policy manual that they won't give consent if the state order, the SI, Special Immigrant Order, is done primarily or solely for immigration purposes. So what happens then if the immigration judge says, why don't you, child, go get a state court order for — that'll help you for immigration purposes? How does that affect the consent determination? So I don't know what CIS would do with an order like this one, which clearly states the reasons about wanting to make sure that if there's a medical decision, there's not going to be any problem for this child because the father's consent is not going to be sought. So on its face, it clearly includes reasons beyond just the immigration reasons. Whether CIS would try to second-guess that or go beyond the California Supreme Court on this — The question was that the authority is given to state courts for immigration purposes. So it seems to be squarely in the, this is primarily or solely for immigration purposes. So it seemed to me questionable as to if the immigration judge directs the child to the immigration court — to the state court, how is that not for immigration purposes? Yes. I mean, the California Supreme Court in Bianca held that state courts are —  Yes. So the question whether the CIS, whether the CIS will try to deny these kinds of I-360s, even though, as I said, on its face it gives a nonimmigration purpose amongst, you know, the reasons, is not entirely certain. And this Court has never required you to establish absolute certainty on a failure to advise claim. In some of the cases, like in Bui and in Moran Enriquez, the Court said in its opinion, this Court said, we're not even sure that — certain that this person is going to be — is going to get the relief in question, but the failure to advise is error. But why isn't the larger problem that this is illustrative of the special circumstances of children with regard to the right-to-counsel problem? Because we've now uncovered a whole bunch of very complicated legal questions and factual questions that would have to be decided. And even if the I.J. — I mean, in this case, he had the information at least to the degree that the child said, I hadn't seen my father for a long time. That's about it. That's what information he had. Right? And that, you know, even on current standards, should have led to an advisement. But then what? I mean, as you said, what's it going to do with him? Burschel. Yes, Your Honor. Everything I'm saying now, like arguing that the State court order on its face has a nonimmigration purpose, arguing to the — for the continuance at the outset, all of these things are things that pro se people are not going to — pro se children certainly are not going to be able to do. When do you contend that an alien minor's alleged constitutional right to counsel arises? When the minor's apprehended, when the minor first appears before an immigration judge, when the minor denies removability, or when the minor asserts an exception to removability? When you're in front of — when you're in front of the immigration judge, Your Honor. And the reason for that is because that's the point at which — The first time you appear. Yes, because there's a prosecutor in that proceeding, because you can be ordered removed in that hearing. You can be ordered removed in absentia if you do not appear in that hearing. All of the consequences, the massive deprivations of liberty are potentially at play in that first hearing. Well, OK, but you — but you contend that it's this blanket right. But in Lassiter, the U.S. Supreme Court held that the need for appointed counsel in parental termination proceedings involving incident parents should be determined on a case-by-case basis. Why doesn't that reasoning apply to removal proceedings involving minors that are illegal? Well, two things, Your Honor. I mean, first, the child — Why do they get more protection than terminating parental rights of — Well, yes. So first, Your Honor, the child in Lassiter is represented. And this is a very important difference, right? The adults, it's case-by-case. As Your Honor had said, some parents require counsel and some not, based on the complexity of the case and these other things. So what's the difference of a child accompanied by an adult, as in this case, who's making all the decisions, and an adult, another adult? Yes. Yes. Thank you, Your Honor. So three important differences. First, that claim that the parent is sufficient to protect the child's interests is rejected in Galt. Specifically, it is — That was for incarceration context, so a completely different context. Well, let's bracket that, because I'm not sure it's as different as you're suggesting, Your Honor. But it's also rejected in all of these other contexts that do not involve incarceration, termination of parental rights, status offenses like truancy, judicial bypass and abortion, in all these contexts, many of which have nothing to do — So are those cases where the parents and the child might be seen as having different interests? Perhaps, although I'm not sure that's the rationale. Is that the case here, in this case? Well, certainly it could be, Your Honor. And one problem with the rule — if you set a rule that says if the parent or — The child wants to go home and the parent wants to stay. Well, no, decisions — so two things, Your Honor. Decisions are a totally separate matter, right? This is not about conflict of decision, because we know what Maria wants. The mom wants a lawyer for CJ. So you can put to one side all of the situations, which are quite difficult — we've been dealing with them for a while — where the parent may — and the child's decisions for what they want may not be aligned, right? This is instead about forcing a parent against their will to represent, in quotes, their child in a removal proceeding, even though they don't — they're not a lawyer and they don't want to do that, and then saddling the child with the consequences of the parent's inadequate or deficient performance. That's what we're talking about. There's no legal proceeding in this country that the government has sided to, none we're aware of, where they say children have rights in a proceeding and the rights are satisfied by making the parents act like lawyers. And — Kagan. What is the authority for the parent to act as a lawyer? I was wondering that. If I — if I'm not the parent, I'm, you know, some friend and I want to come in and represent the person, can I do that in an immigration court? So they can under — whether this satisfies due process is a different matter, and particularly where, you know, you have to have a knowing waiver. But the regulations permit reputable individuals upon the consent, upon the request is the word it uses, of the individual to have that person come in and stand in for them. The — the Immigration Court practice manual suggests that parents are in their own category, separately from that. It lists parents in one place and reputable individuals in another, even though there's no — nothing in the regulations that talks about parents. So we don't know. I mean, we contend that that is itself a due process violation, because, like I said, if a — if a pro se — this is, I think, to answer your question, Judge Ikuda. If — if a pro se person does this, and then, you know, they don't — they mess up to no fault of their own, then they're the ones who get order-deported, right? But in this situation, it's the child who gets saddled with the consequences of the parent. And the parent didn't even want to do it, because the parent didn't want to be — to be — to be put in this position. And you're — You ask a conceptual doctrinal question about how a law is operating. You start out by saying there are two ways into this, one the child and the other. I'm not sure why there's a two. It seems to me that the child issue gets moved into the Martinez — into the Matthews versus Eldridge analysis at the, you know, risk of error stage, essentially. Go ahead. Yeah. Well, the only reason why we think they're different is because there are a lot of situations in which the Matthews question for an adult either would be close or they wouldn't even have counsel, like in Lassiter, as Judge Callahan was mentioning. But where, nonetheless, children are entitled to counsel. We're not aware of any legal proceeding in this — Because there is — I would think it's because the risk of error is different, because the child is of a different ability or a — as we know from many, many areas of law, including minority tolling and everything else, and because of these complications that pertain to children alone. Right. But assuming that, that we have one world instead of two worlds, so if you went through the Martinez — the panel opinion never got past the Martinez analysis. I mean, the — Matthews. Matthews analysis. If — I just had cases running about Martinez. If we went — redid that analysis and concluded, as they did in Lassiter, essentially, that there actually was a Matthews problem, then you get to Stage 2, which the panel opinion never did. So isn't — I mean, if we focused there on the Lassiter question, what would you say about that? Well, if you're asking what is the probable — the evidence about probable value of counsel, I'm not sure if that's what you're — No. I'm asking if we think that the Martinez — the Matthews analysis gets to the conclusion that there is a due process problem. I think I understand. Then to get to the lawyer solution to that, you need to get through Lassiter. Yes. So how do you get through Lassiter? Right. So two ways. You know, first, Lassiter adopts this presumption that in cases involving physical liberty, counsel is required generally. In cases not, it's not. Right. And I think the application of that presumption to our case is quite difficult to figure out. But even if it applies, I think we overcome it. The reason I say it's difficult to figure out is because deportation necessarily ultimately does involve some deprivation of physical liberty. And physical liberty is the word used in Lassiter, not incarceration. You have to seize the person and — Seize the person. This is why there's habeas jurisdiction and removal orders, right? Ultimately, you have to apprehend. So why — but doesn't that argument suggest that adults would be entitled to? It suggests that the presumption would operate the other direction for adults. That doesn't necessarily mean — Why? Physical liberty would be involved. Yes. I'm sorry. It suggests that the presumption would operate in favor of adults. But that doesn't mean that that ends the discussion. Then you look at, are these — because Lassiter says some parental terminations require counsel and others do not. And you have to look and see. Some are simple. Some are complicated. You know, Ms. Lassiter has got a life in prison sentence. So why don't we do that here, too? In other words, why don't we look at the Matthews question generically, but the Lassiter question, as they did in Turner and in Lassiter, at least in subcategories? Yes. And I think — I think as to the — I would think of it as the subcategory of children. Okay. But it could be the subcategory of unaccompanied children. It could be the subcategory of early young children. It could be the subcategory of children eligible for SIJS. Right. Or possibly eligible. And let me — I'm sorry, Your Honor. Go ahead. Yeah. Let me argue for the subcategory of indigent children in removal proceedings for these reasons, right? First, these cases, this set of cases, have a lot in common. If you look at the appendix to the supplemental reply brief, it's this declaration that the government submitted from Stephen Lang describing the Baltimore representation program that the government runs where they represent children universally, every child up to a certain number that they can take in the immigration court there. Eighty-seven percent of those children are prima facie eligible for relief and are applying for relief. Right. We know now with this particular population, 73 percent of the children in the proceedings are from Honduras, Guatemala, and El Salvador, three of the five most violent countries on Earth. So the time that you would take sifting the cases to determine relief eligibility, which would have to be done by a lawyer, because as we've seen in this record and many others, obviously a judge is not in a position to figure that out on their own. That is extraordinarily inefficient.  In a world where something like 80 to 90 percent of the cases are ultimately going to be eligible for some relief. And these are the kinds of considerations that the Court was looking at in Lassiter and in Turner. Well, you just made a jump there, though, because coming from a violent place is not a basis for relief. It isn't, Your Honor. But coming from a violent place means that you have to now do analysis under a particular social group, which has, as I think Judge Callahan said, is elusive. And who is going to explain to a child how to define their particular social group? No form will give you the answer to that question. Counsel, I was just saying on the SJI status for a second, tell me how, let's assume a lawyer were appointed in the removal proceedings. Would that lawyer then file the state court dependency petition? I'm trying to figure out how this works. Yeah, it's up to the lawyer. But in practice, that is what happens. Either the lawyers themselves are doing it in these programs that the government is running right now, or they're reaching out to other counsel and arranging it for that to happen. But we're not arguing that this Court or, you know, that anyone should be appointing judges in state court proceedings. You appoint in the removal proceeding. No, that's why I was asking. But your assumption is that somehow that lawyer would arrange in the appropriate case for the petition. That lawyer is ethically obligated to do everything they can to prevent the entry of the removal order, you know, within, obviously, their ethics. I had one more question. I'm sorry. Judge Wallison, go ahead. Counsel, are you asking us as a matter of law to hold that every juvenile person in removal proceedings must be advised of a parent eligibility for SIJS status? No, Your Honor. Only if the record has evidence in it suggesting a parent eligibility. So here, the I-589, the mother's testimony, and the CJ's testimony himself all say that he was abandoned by his father long ago. The other relevant criteria is the best interest of the child. And he's found credible on the claim that gang members have threatened to kill him and they put a gun to his head. Like, those two are enough to then trigger the advisal application requirement. My question to you has to do with how, if there is a limitation or a line-drawing exercise, how should it be done? And Matthews itself does it by the nature of the procedure. That is, it was people who were on getting benefits but were no longer disabled and they narrowed it procedurally. And there's a footnote, 15, I think, that says, well, other types of decisions have other kinds of procedures that aren't in front of us. So why wouldn't the procedure, the nature of the procedure, be the most appropriate line-drawing exercise, those who are prima facie eligible for this SIJ relief? Well, you're excluding asylum from that. And I think it'd be very, very important, asylum and withholding and CAT. I understand that, but... So I guess I would argue for... But this is a more complex procedure by a lot, is it not? It is definitely more complex for sure because you have to go to different proceedings to do it. My view is that... Not just my view. I mean, children, the defects that render children less mature than adults and therefore available for different treatment in so many, virtually every legal context, those are also reasons why children cannot litigate asylum cases.  And discern those facts and then present those. The study from the Steinberg and Woollard brief, it shows that 14 and 15-year-olds, CJ was 15 at the time of this removal hearing, about half of them perform as well as people incompetent to stand trial, even with a lawyer, on these basic tests about understanding the legal system. And you also have to, of course, challenge the judge or challenge the prosecutor when they make their arguments. But children are taught not to stand up to adults. Don't challenge and argue with them. So I would argue that the deficiencies that we're talking about are absolutely still foreclosed, effectively foreclosed the availability of other forms of relief as well. Your Honor, I'd like to preserve my time, please. May it please the Court. I'm Scott Stewart on behalf of the Acting Attorney General. The petitioner contends that in certain contexts, children need help. In the context of immigration removal proceedings, however, they have it. Existing law, existing procedures, and existing duties give children of all ages the help they need and the help that due process and Federal statutory law requires. Who's charged with giving them that help? Who's charged with giving them that help, Your Honor? Most critically as a first-line resource is the immigration judge. The immigration judge, as this Court knows, has a duty to probe the record, to develop the record, to seek the record. To probe, but not to investigate anything. Your brief at one point uses the word investigate. But that is certainly not the IJ's responsibility, right? Your Honor, I think in the context, that's a fair characterization. Maybe not going outside the courtroom and investigating. But in these cases, the immigration judge will be asking the person with the most relevant knowledge oftentimes. And not only that, they are now being admonished not to do this, largely, and being told that they're neutral and that they shouldn't be treating children specially and that they shouldn't be doing very much to accommodate the child, just, you know, briefly. And, I mean, there's obviously a tension between having an IJ as an advocate and having an IJ as an adjudicator. And there seems to be a lot of emphasis right now on not being an advocate. Your Honor, I think it's a different role than purely neutral, detached, judge say, and advocate. It's a kind of a middle, different, unique outlier sort of role that this Court has emphasized in the Jacinto case and in other cases where the Court gets to the bottom of this duty to develop the record. Well, but the government's basically been characterized as, you know, Attila the Hun here, and going to the extreme that 3-year-olds would have to represent themselves. And so in the government's view, when, if ever, would it be appropriate to appoint counsel for a minor in an immigration removal proceeding? Your Honor, I don't know. I couldn't commit to a particular case where it would be constitutionally required to appoint counsel. You seem to suggest that in your reply. You argued never. So tell us, now you're backing down a little, when would it be? Since you argued never, and you're apparently not arguing never now. I am arguing never, Your Honor. So the answer to Judge Callahan's question is never, in your view. That's not what you said in your- That's what you said in your brief. Right? Never. Never is your answer. Right. Two years old. Never. What the law requires, Your Honor, and due process in this context requires is a fundamentally fair proceeding. And so your view is that there can be a fundamentally fair proceeding with a 2-year-old in front of an immigration judge with no representation at all? Your Honor, that's not the position we're taking. We're taking that you need the relevant person or people in place to enable that proceeding to be fine. I have not heard a case, my friend on the other side has not pointed to a case where only a 3-year-old, only a 2-year-old shows up in court, no guardian, no friend of the court, no parent, just no one, no one at all. So even- So do you make no distinction then between a minor who is accompanied, say, by a parent and an unaccompanied minor who has no one, guardian, friend, aunt, next-door neighbor, person that happened to be in the courtroom? You make no distinction there in terms of constitutional right to counsel? I think in each case, Your Honor, the question is whether the minor can get a fair hearing, and the immigration judge is there to evaluate can this particular minor get a fair hearing, do I need to continue the case, do I need to give some time to see if this unaccompanied minor- I think the answer to my question then is no, you don't make any distinction between the two categories. As far as whether the Constitution would entitle- Correct. Government-appointed counsel. We make no distinction as to that categorical entitlement, Your Honor. So would you think then the immigration judge has an obligation at each hearing  to give a fair hearing to the unaccompanied minor who has no one, guardian, friend, next-door neighbor, person that happened to be in the courtroom? No, Your Honor, I think the obligation is a more fundamental one, it's can this minor, given his or her individual circumstances, get a fair hearing, can, you know, is the minor going to be able to be heard properly? But what if he had a baby in a basket? What if he had a baby in a basket that couldn't even talk? Your Honor, if I can, I mean, I do think that there are differences in what would be required for, say, a gregarious, outgoing, very sharp 17-year-old and in the situation you're presenting now. Would a lawyer, an appointed lawyer, ever be required? I can't think of a situation, Your Honor, but again, I think- Why not with this procedure? Because your brief, at least your reply brief, makes a big deal of saying removal proceedings are not uniformly complex, but it seems to me that the SIJ procedure is uniformly complex because of the requirements of going to state court and getting certain findings, and there are a lot of unusual things to be done in that specific context that are not done in an ordinary removal proceeding. Why isn't at least that procedure sufficiently complex that under the Matthews analysis it does require counsel? Your Honor, I think the SIJ situation is somewhat unusual in that it would go outside the immigration proceeding itself. That's exactly my point. So do you agree that it is sufficiently complex to have a different analysis apply to it? I don't. I think the same analysis applies here, Your Honor. But, Judge Graber, if I may, I think one response that I think wraps up a kind of hits home, a central part of your point and Judge Callahan's point, is the right argued here for is a categorical one. It's sweeping. It's every minor underagent- It doesn't have to be. That's the wish list of opposing counsel, but that's not we're not bound to that. Matthews, as I mentioned earlier, has a very specific to one procedure and one situation. So it doesn't seem to me to be an adequate answer to my question to say, well, that's not what they're asking for. That's pretty important, Your Honor. I mean, the- But what you've done in your supplemental briefs particularly, I mean, you just answered that you think that never would there be a right to constitutional counsel, and yet in your supplemental brief you're attacking the categorical request, suggesting that there may be other circumstances, there may be some circumstances, either on an individual basis or on a subcategory basis, in which there is appointed counsel. So I don't understand your position. Which one is it? Sure, Your Honor. The point we're getting at is that we have to take the claim as we find it. The claim here that the Petitioners have advanced is an unyielding categorical question. But we don't just have a single case here. Let's assume we reject that claim. Let's assume we say there is no unyielding categorical right. The question we keep trying to ask you and you don't want to answer is, is there ever a right under any circumstance? And also, we have an individual case here. So is there a right in this case? It's the only case in front of us. Certainly not, Your Honor. If I can explain kind of why this is a good illustration about why there isn't a need for counsels, for government-appointed counsel in removal proceedings. The IJ did a thorough job of developing the record, of asking the relevant questions. Well, you certainly got the SIJS wrong, didn't you? I'm going to interject on another point in a moment, as Luigi did not, but keep going. Sure. Your Honor, I can hit the SIJ point here as well. But the IJ, this is at pages 105 to 115 in particular, asked about age, education, manner of entry, family, got to the bottom, the removal situation, asked about other applications, asked about any pending petitions, looked into, you know, did you have fear, probed the nature of the fear, asked both C.J. and his mother. She did a thorough job to see, you know, was this gangs, you know, was there anything else besides gangs, getting at the point of, like, who was the actor here? She repeatedly asked these questions about who, why do you fear? Is it just, you know, the private threatened violence by gangs, or is it something more? She repeatedly advised about just consequences of failing to appear. She advised about the ability to present evidence, documents. The IJ really, you know, gave, put in the country report, invited the asylum application, acknowledged, you know, even in doing so, that there was going to be a, you know, a potentially difficult battle in obtaining this kind of relief, granted 15 months of continuances, gave the legal aid list. She did all of these things. You know, this Court has emphasized in JEFM and other cases that the IJs are trained and required to probe the record, particularly with pro se agents. I could interrupt for a moment. Assuming that we have an as-applied challenge here as to C.J.L.G., if we determine that C.J.L.G. was not, that due process didn't require him particularly to have a counsel, can we nevertheless go forward and ask categorical questions about what categories might, in fact, younger, 2-year-olds, babies in baskets, whatever, can we consider the facial inquiry? I don't think so, Your Honor. I think we've mentioned this in some of our briefing, that there would be standing issues of giving a right that C.J. himself couldn't benefit from, that he doesn't represent. For example, if you were to draw a line for children younger than C.J. is, there could be an issue. There's also the fact that C.J. was accompanied by his mother, which can be a distinguishing factor in some of these cases and kind of shows the variance of the protections, you know, that could be in place. So is your answer there's no categorical right and C.J. in particular did not, there was not a due process violation in his hearing? Correct, Your Honor. No categorical right, no due process violation for C.J. And then if I'm understanding your answer to Judge Ikuda is that the court doesn't need to go further and say when there might be, but the court isn't precluded when that case presents itself from making that determination, even though you're taking this position, it could never, ever, ever, ever, ever happen.  We would submit, as you've heard my submission, Your Honor, but it would, you know, if there would be another case presenting different facts, I think the court could assess it at the time. So could you get back to the special status, the S.I.J. status, because as to removal, I understand your argument, but there's another issue in this case, which is whether or not in a case in which there's apparent eligibility for discretionary relief aside from asylum, whether or not there's a necessity in that case, A, to inform the child, which wasn't done here, or B, to appoint counsel? Well, I think if anything, Your Honor, there would just be a simple regulatory violation about the failure to advise as to apparent eligibility. And what? And then we grant relief and send it back? I mean, I think if there were an error, there would be, I mean, some kind of the regulatory sort of thing. Was there an error? And do we grant relief? There was no error. Is S.I.J. a form of relief? Is getting a State court order a form of relief, and what relief does it entitle you to? I'm sorry, Your Honor. It's ultimately, I guess, it's the adjustment of status that would have. So S.I.J. itself is just a court order, and it doesn't entitle you to any relief. Is that correct? I think that's right.  For a form of relief. So it's a few steps removed. That's right, Your Honor. But it is a form of relief. I mean, it puts that juvenile in a very different situation than many juveniles who can't argue that there's not a two-parent situation. It's still a discretionary form of relief. As is asylum, correct? Correct, Your Honor. So certainly discretionary can't be the guiding principle if they're both optional. In a due process analysis, Your Honor, I mean, discretionary rights are different in kind from other entitlements. They don't create a liberty. But the whole point of the regulation. Let me go back. Let me just go back, though, to the S.I.J. relief. If you're not looking at it from a due process standpoint initially, but instead from a failure to advise, which is where we started. So it is a failure to advise of a potential form of relief, is it not? I don't know that I would go that far, Your Honor, because I do think, as Judge Ikuda emphasized, it's a bit removed. I mean, this is not something that's been recognized. So I don't think I'd quite concede that. What if C.J. were the spouse of an American citizen in removal proceedings and the I.J. knew that? Would the I.J. have the obligation to inform C.J. that, as the spouse, he had the ability to apply for discretionary relief? I believe in this Court's en banc decision about the apparent eligibility issue, the Court has flagged that.  Somebody else has to grant it. There's no guarantee. If the person in Judge Hurwitz's hypothetical merely had a girlfriend who was an American citizen, I think the BIA has said that merely having a girlfriend did not require the I.J. to inform the person that he could marry the girlfriend and then apply. Isn't this more like indirect possibility, but not any way that you could apply for relief in the hearing? I agree. That's a good way of thinking of it, Your Honor. I think I'd sort of draw the comparison to the need to go get the State court order as well as some of the other steps that Your Honor is highlighting. But the underlying facts aren't changing. The difference between the hypothetical and this is that this child is in a static, factual situation with regard to the relationship to his parents and to his father. It's not like he has to go and, you know, tell his father to leave and then go apply for it. The father is God. And all he needs, he has a set of facts. And the question is on these set of facts. It says he has a parent eligibility, not if he changes the facts. He's not trying to change the facts. Your Honor, I think we still have the indirect step issue that Judge Acuda raised about the need to still go get that predicate court order. But that's the reason for that, of course, is because these parental rights issues are State issues. And so the Federal government doesn't want to be in the position of making a decision until it's determined what the shape of the box is. So I'm not sure why it's an indirect form of relief. There is a predicate before you could get Federal relief, but I don't see why going to the State court, just because you have to make an additional stop, I'm not sure what the intellectual distinction is. I think it's, you know, is the relief apparent or not, Your Honor? And I do think when you just have a question, you're going through the kind of what is this person's situation, it wouldn't necessarily reasonably trigger for an immigration judge, oh, this is a real prospect here because of the steps removed. I recognize that there's kind of a continuum. Well, a well-educated, self-educated I.J. who was aware of all the opportunities, it should have been obvious, don't you think? I don't think so, Your Honor. And I think the I.J. here was really very conscientious and careful as she went through everything. Can the I.J. If the I.J. tells a petitioner before the I.J., you should go to the State court to get this order because it will assist you in applying for immigration relief. How does that affect the USCIS's consent, given the policy manual saying it can't be primarily or solely for immigration relief? Your Honor, I gave that some thought when you presented it to my friend, and I'm not sure exactly how that would shake out on the consent decision. I wish I had a crisper answer, but I'm not sure exactly how that would be decided. You know, as I look at what happened in this case, you've got an I.J. who's doing her best. She misses the S.I.J. stuff. But even as to the things on which she is absolutely focusing on about the gang violence, if she were acting as his lawyer, she would have asked more questions. She would have asked, for example, have you witnessed gang violence as to others? Are you a potential witness? I mean, there are subcategories in which gang violence would make him eligible, and a good lawyer would have asked more questions than she did. So even if it's a simple case, I don't think the I.J. is doing the same job a good lawyer would do. Your Honor, I'd push back on that a bit. I do think — and she was trying. I mean, I don't fault the I.J. for lack of effort. Right. I think she did a reasonable and thorough job here, and here's why it's — Well, for example, the application says something about his uncle having been killed. It's an incoherent application for the most part. But it does say that his uncle was killed by them or something like that, and she never asked about that. Your Honor — I'm sorry. Your Honor, she did ask, however, about just violence to other family members, what the nature of the violence was. About the fact that your application says that your uncle was killed. I think that's right, Your Honor. But she did — she did home in on, you know, what is your fear? Is it — and C.J. and his mother repeated and said it's the gang. But she's got in her head certain categories that would produce relief, and she does not ask questions directed to those categories as a good lawyer would do. She does not say, does this happen, did this happen, did this happen, until she asks the questions that way, he's not necessarily going to give the answer that would say, oh, well, you have something. But she doesn't do it that way. Your Honor, I think that she — whether she would do it exactly, say, as a — say as a reporting attorney would do, I think she did it in the right way to make sure that C.J. had the opportunity to be heard. But what about the amicus brief from the former — the lots of former I.J.s who say there's no way we can do this? Your Honor, I mean, I think what I'd submit here is that the record here, it defies that characterization. I mean, we have page after page where the I.J. was — She missed the S.I.J. Your Honor, the S.I.J. status, I mean — And also was — I mean, she didn't do an investigation. She couldn't have done an investigation. She wouldn't have been right to have done an investigation. So she doesn't know what happened to this uncle, and she didn't make an inquiry about it, and she had no time to. I mean, that's their main point. We have thousands of cases. We're being told to get the cases done in one hearing. We're being told that we're supposed to decide 700 cases a year. There's no way we can do this. That's what the immigration judges say. Your Honor, I would simply disagree with the immigration judges in what I would say is that the due process requirements will still apply. The duty to investigate the record still applies. And I would emphasize here, look, she repeated — she, the I.J., repeatedly homed in, you know, how many — you know, was there any physical harm? How many times were you threatened? What were the nature of the threats? Why were you threatened? You know, what happened with your family? Ask some other — But they didn't ask about the uncle. She didn't ask why you were threatened, in fact. She, in fact, did not ask why you were threatened, which wasn't in a criminal  That's a critical question. Let me ask you, returning to a different theme, you start off by saying, I think, that in no circumstance would the due process clause require appointment of counsel in a removal proceeding. And then I heard you say that, of course, we have to look at the fundamental fairness of the proceeding. So what if an I.J. concludes it would be fundamentally unfair to allow this minor procedure without counsel? Is there a due process right to counsel under those circumstances or not? Your Honor, I think there would be other tools available. Continue the case. You know, use — So, let's say — Continue case is in there. It's a 2-year-old, so let's continue until he's 3 or 4 or 5. I mean, my question is pretty simple. I gather, because you're not answering all these, you're saying there is never a due process right for appointment — requiring appointment of counsel for minors, even when an I.J. deems that the proceeding would be fundamentally unfair if it continued without counsel. Right, Your Honor, but I would emphasize that I do think existing procedures do get this. Unaccompanied minors very frequently have counsel, particularly when they have time to go get it, as they still can. I think to hit Judge Paez's concern about administrative closure, yes, administrative closure has been tightened up, but there can still be continuances for good reason, for good cause. Is administrative closure still available today? I think in a — What would happen here with this, with the S.I.J. application? Suppose it says, oh, look, your parent is eligible, you know, you need to take care of this. What does the I.J. do? Continue the case? Administrative. Close the case? Today? I think potentially continue the case. How long can he continue it? Or she continue it? I'm not — I'm not sure that there are limits on that. I mean, there is some, I believe, discretion in doing that, but — But a lot less, according to the Attorney General. Your Honor, I think you're referring to the goals for case completions. Also this opinion that came out about this. Recently. Recently. Which piece of the ability to grant continuances? The name, but it was S.I.J. earlier. On administrative closure. I think — I mean, administrative closure is one thing, Your Honor, but I think the Attorney General has — did recently say, like, look, you can still grant continuances, but they can't be kind of for any reason. They need to be tethered to the regulations requirement of good cause. It seems like you — you probably liked my 3J opinion better than being here. Okay? And I would say that it would not be unfair to say that I considered that to be the right decision when I made that decision. But that being said, it seems that our courts have, even though this may be antithetical — it may be against everything that you believe, that when people — if they can put a toe over here, then our case law gives them some due process rights. Do you concede that? We're not contesting that Aileen is President of the United States. Well, but then I wonder if you go too far and say that due process could never, could never, ever, ever, ever involve the appointment of an attorney. Because I'm not sure that — the Supreme Court might very well agree that there isn't a categorical right that, you know, I can't say where this court's going to go. I mean, we haven't conferenced on that. They may agree on that point. They may even agree that CJ isn't entitled to anything. But I don't know that they would agree that due process could never involve the appointment of counsel. So are you going a little too far here to — if this went to the Supreme Court to make those kind of statements? I don't think so, Your Honor. But maybe I can suggest a way to leave the issue to another day. I think given the nature of the Petitioner's claim in this case, of a categorical right to counsel, I think the appropriate approach would be, look, we reject — we, the Court, reject the categorical right to counsel for all children. We reject the particular claim in this case. Kagan. What the Court did in Lassiter and Turner, what the Court did in Lassiter and Turner was first do the Matthews analysis, then turn to the Lassiter question, and then decide whether there — then decide that there was not a categorical right, but then remand to decide whether the right applied in the particular case. In other words, it went in the opposite direction from the way you're suggesting. I'm not sure that — I mean, they rejected the categorical right. That's what I'm suggesting that the Court should do first. Well, they engaged in the categorical analysis first. So let me ask you this, counsel. If we were to go the route that I think the Supreme Court did in Lassiter and grapple with the factors under Matthews from a categorical standpoint, then we'd have to figure out at the second step when the risk of an erroneous deprivation of the important right would be insupportably high under the language of Lassiter. Do you agree with that? If you're suggesting would you — would the Court do the Matthews analysis for this individual, for C.J. himself, Your Honor, is that the question? If we were to start and engage in the Matthews analysis, then we'd have to figure out from a categorical standpoint when the risk of erroneous deprivation of the right is too high. And then we'd get to the Lassiter and apply it to the facts of the case. But in that process, you had indicated, I think in response to Judge Thomas' question, that if an I.J. determines that a particular minor applicant is apparently eligible for C.I.J. relief, then the I.J. can grant a continuance. Did I understand your answer correctly? I think it would depend on the circumstances, but I think for a good cause situation, I think a continuance would still be available. Well, sure. I mean, the I.J. has got the minor in court. The I.J. thinks, well, wait a minute. I see here that your dad abandoned you. There might be a C.I.J. issue here. So the I.J. grants a continuance so that potential relief could be pursued in a State court. But who would pursue it? What would the I.J. do? The I.J. In other words, the granting of a continuance isn't going to, in and of itself, solve the problem unless there's somebody assisting the minor through the State court proceedings. So as it stands right now, if there is an I.J. who identifies that as a ground for potential eligibility, a pathway to legal status, what would the I.J. do as it stands right now? The appropriate approach is the grant is — it is a limited one, Your Honor, but it is the continuance, just encouragement as to what may — Right. But a continuance to do what? I mean, I'm trying to get to the practical issue of how I.J.s can exercise their discretion. So if the I.J. says, oh, I see the parent eligibility here, let's say the minor's in court, whether accompanied by a parent or not, I think I'm going to grant a continuance. I'm assuming the I.J. would say, I'm granting continuance so that somebody can help you go to State court in order to pursue this order. That's the first step to getting S.I.J. relief, right? Your Honor, yes. I think what they would say here is, like, look, would you like a continuance so that you can try to find a lawyer and take the steps necessary to get this status? If they say, yes, Your Honor, I really would, I would like, you know, some time to look for that and pursue that, that may be the triggered finding. I don't think the I.J. can do a whole lot more than that other than give the opportunity. So would you right now say, I think that a lawyer would be necessary in order to pursue that form of relief, so I'm going to appoint you a lawyer? No. So in this case, we would have to basically go through the voluntary organizations that are currently set up in place. Voluntary organizations, in some cases, retain low-cost counsel. I mean, those are the options available. In this context, when you're involving a presumption against appointed counsel, But even if there were appointed counsel, I'm still puzzling over if we were to determine that certain cases require counsel in an immigration court, could the immigration judge actually appoint a lawyer for a state court proceeding? I'm not aware of authority to do that, Your Honor. In these programs that are sponsored back east, I think there was some information in the record about programs that the Executive Office of Immigration has funded to provide counsel. Do those lawyers go to state court? May I answer, Chief Judge Thomas? Yes. Thank you. Not that I'm aware of, Your Honor. I believe that those, at least if I'm thinking of the pro bono Board of Immigration Appeals, I think what those serve to do are keep an eye out for potentially meritorious claims from immigration judge decisions where somebody might have a claim to stay in the United States and affording counsel for those kind of claims. I don't think it's to the – What's the purpose of those programs? I'd have to check as to what the stated purpose is, Your Honor, but I think – What's driving them? I mean, I think the Executive Office for Immigration Review is, as a whole, it's very careful to protect the fairness of its proceedings. That's why the immigration judges take care to look into the individual circumstances of the minors or whoever are before them. Can this person get a fair hearing? Do I need to continue things or add some help? I think overall it's trying to get to the fair and correct result. Thank you, counsel. Thank you, Your Honor. I have one preliminary question, a little to the side. You made some motions, requests for a judicial notice. Did the government oppose those? No, Your Honor. The answer to Judge Pai's, I think it was Judge Pai's question, government lawyers do go to State court under these programs, and they do it all over the country, not just back east, even in Los Angeles. And here that is happening, Your Honor. So can I ask you a procedural question? Let's assume we were to accept one of the arguments you make, which is that because your client wasn't informed of the possibility of this collateral form of relief that we should grant the petition for review. Is your client now represented? He's represented in the State courts and in the I-360. So that we wouldn't have to then worry under that circumstance whether or not he needed to be appointed counsel? No, Your Honor. He'll also, I think, turn 18 in February. So, no, Your Honor, would not have to worry about that. You know, I, too, don't fault, in a sense, the immigration judge in a 700,000 case backlog with performance metrics on continuances and all these things in not asking questions like why did the gangs target you when Nexus is fundamental to asylum, why do you oppose them, which could give rise to a claim, why did they target your uncle? But if we want fair hearings for children, if we want accurate determinations and people who are eligible for asylum to get it, someone is going to have to ask those questions, and they will have to do it privately in a conversation with a child. Maria, the mother, Your Honor, is not that person, because she does not obviously understand the immigration law, as is perfectly apparent from this record. And her claim, Judge Hurwitz, you had asked earlier about consolidated or derivative cases. She's not consolidated. She's in a different court, a different proceeding. And her claim, whatever it would be, would be different, because he's the one who had the gun put to his head. So there's something fundamentally different, I think, between a situation where a child's claim is literally entirely derivative, like they have nothing to testify against, to offer, and a situation where some parent or some other adult is standing next to the child in court. To charge that person with playing the role of a lawyer would be completely contrary to every other proceeding involving children that, you know, exists when children are in court. On the question of probable value of counsel, Your Honor, I think the statistical evidence is extremely important here. You know, this Court has said repeatedly immigration laws are second only to the tax code in complexity. Other circuits have said the same. They've said that in asylum cases. They've said it in all kinds of cases, not only in special immigrant juvenile cases. And if you look at the statistical disparity, you know, we've cut it a bunch of different ways in different time periods, but it's — it's — if you look at the 2014 to on cases, it's something like 17 times more likely that you're going to get ordered removed if you — if you don't have a lawyer. That apply to adults as well? There's no — there's no data in the record on the question of adults, Your Honor. But the Court asks, when deciding in Matthews whether to grant the safeguard, what they ask is what is the value of having the safeguard versus not having the safeguard. And we know it's massive. Well, but if it — but does that depend on — we don't know whether attorneys just take the good cases either, do we? We do know that, Your Honor. That is definitively rejected in Dr. Long's report, which is in this record. If it were true that attorneys only took the good cases, then you wouldn't see huge representation rate disparities between, for example, San Francisco, where there are lots of attorneys, and Baltimore, where there are very few. Or when the number of children increases, suddenly the number of represented children drops. We know that there's not a selection effect that's operating here. Most of these children are eligible for some form of relief in the current system. And if they're going to have any serious possibility of obtaining it, they need legal representation. Thank you, counsel. Thank you both for your arguments this morning. The case just heard will be submitted for decision, and we'll be in recess. Thank you. Thank you.
judges: Thomas, McKeown, Graber, W. Fletcher, Paez, Berzon, Rawlinson, Callahan, Ikuta, Nguyen, Hurwitz